# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JAMES E. CHAMBLIN,
    Petitioner,

    vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:15-cv-545

Beckwith, J.
Bowman, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in

Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254. (Doc. 3). This matter is before the Court on respondent's motion to dismiss (Doc. 12),

which petitioner opposes. (*See* Doc. 14).[1]

## I. PROCEDURAL HISTORY

### A. State Proceedings

#### 1. Trial (Case No. B-0903691) And Direct Appeal (Consolidated Case Nos. C100170/C100177): June 2009-March 4, 2011

In June 2009, the Hamilton County, Ohio, grand jury returned a seven-count indictment

charging petitioner with two counts of rape of a minor under the age of 13 in violation of Ohio

Rev. Code § 2907.02(A)(1)(b) (Counts 1-2); one count of attempted rape in violation of Ohio

---

[1] Respondent has also separately filed 55 exhibits obtained from the underlying state-court record, as well as the trial transcript, as support for the motion to dismiss. (*See* Doc. 11). On March 31, 2016, the undersigned denied the petitioner's motion "to expand the record and obtain the unabridged files" of the child victims' psychologist, which are not in the respondent's possession and which petitioner nevertheless requested for the stated purpose of "solidify[ing]" his claim of "actual innocence." (*See* Docs. 5, 15). The district court overruled the petitioner's objections to the denial of his discovery motion and denied petitioner's subsequent motion for reconsideration of that ruling. (*See* Docs. 16-19).

Rev. Code § 2923.02(A)/2907.02 (Count 3); and four counts of gross sexual imposition of a

minor under the age of 13 in violation of Ohio Rev. Code § 2907.05(A)(4) (Counts 4-7). (Doc.

11, Ex. 1). The incidents giving rise to the charges allegedly occurred in 2008 and 2009. (*See*

*id.*). In the Bill of Particulars filed in the case, the State provided the following factual bases for

the charges:

> [T]he defendant James Chamblin, on the dates stated in the indictment sexually
> abused his children K.C. and J.C. The defendant touched the penis of J.C. and
> touched his own penis in front of J.C. He attempted to have J.C. perform oral sex
> upon him. He showed nude pictures of women to J.C. He put his fingers inside
> the vagina of K.C. and put his penis between her buttocks. He touched the breasts
> of K.C. and tried to get her to take her clothes off after dragging her into a
> bathroom.

(*Id.*, Ex. 2).

The matter proceeded to trial before a jury, which acquitted petitioner of the two

rape charges (Counts 1 and 2), as well as the lesser-included offense of gross sexual

imposition contained in Count 2 and the gross-sexual-imposition charge set forth in Count

4. (*See id.*, Ex. 3). However, the jury found petitioner guilty on the attempted rape charge

(Count 3) and the gross-sexual-imposition charges in Counts 5, 6 and 7. (*See id.*, Ex. 4).

Following a hearing, the trial court classified petitioner as a "Tier III sex offender" on

March 16, 2010 and issued a judgment entry on March 30, 2010 sentencing petitioner to

an aggregate prison term of twenty-two (22) years.[2] (*See id.*, Exs. 4-5).

On March 17, 2010, prior to the issuance of the final judgment entry on March 30,

2010, petitioner filed a *pro se* motion for mistrial based on various allegations of

---

[2] Petitioner's aggregate sentence consisted of consecutive prison terms of seven (7) years for the attempted
rape offense charged in Count 3 and five (5) years for each of the gross-sexual-imposition offenses charged in Counts
5 through 7.

ineffective assistance by his trial counsel. (*Id.*, Ex. 6). The trial court issued an entry

denying the motion without opinion on April 1, 2010. (*Id.*, Ex. 7).

Both petitioner and a new attorney for appeal purposes filed timely notices of appeal to the

Ohio Court of Appeals, First Appellate District, which consolidated the appeals. (*See id.*, Exs. 8-

10). Petitioner's counsel subsequently filed an appellate brief on petitioner's behalf raising the

following assignments of error:

1. The trial court erred to the prejudice of the Defendant-Appellant by not granting the Rule 29 motion as there was insufficient evidence to convict.

2. The trial court erred to the prejudice of the Defendant-Appellant because the verdict was against the manifest weight of the evidence.

3. The Defendant received ineffective assistance of trial counsel.

4. The Defendant-Appellant was given an unlawful sentence under *State v. Foster*.

5. The Defendant-Appellant was denied due process of law and subject to cruel and unusual punishment when the court sentenced him to a 22-year sentence.

6. The trial court abused its discretion in imposing consecutive sentences.

7. The trial court erred to the prejudice of the Defendant-Appellant by sentencing him on all the attempted rape and gross sexual imposition counts as they are allied offenses of similar import.

(*Id.*, Ex. 11). Petitioner's counsel also filed a supplemental brief in accordance with a court order

requiring the parties to address the application of the Ohio Supreme Court's decision in *State v.*

*Johnson*, 942 N.E.2d 1061 (Ohio 2010), as it pertained to the seventh assignment of error. (*See*

*id.*, Exs. 13-14).

Thereafter, on March 4, 2011, the Ohio Court of Appeals issued a Judgment Entry

overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 16).

It appears from the record that petitioner did not pursue a timely appeal from the appellate court's

decision to the Ohio Supreme Court.[3]  (*See* Doc. 12, p. 4, at PAGEID#: 1783).

### 2. First Motion For New Trial: November 15, 2011-February 22, 2013

On November 15, 2011, over eight months after the issuance of the direct appeal decision,

petitioner next filed a *pro se* motion for new trial with the trial court. (Doc. 11, Ex. 17).  In the

motion, petitioner asserted the following claims:  (1) ineffective assistance of trial counsel, which

petitioner contended was "never . . . argued fully, to the level it should have been"; (2)

prosecutorial misconduct; (3) improper amendment of the indictment in the jury instructions on

the attempted rape charge; (4) improper indictment based on false and perjured information

provided by the victims, who had recanted their testimony against the petitioner; (5) "actual

innocence" in light of "newly discovered evidence" in the form of "affidavits and letters of

recanting" witnesses "and of witnesses [who] did not get to testify" at trial; (6) the jury's guilty

verdicts were against the manifest weight of the evidence; (7) insufficient evidence was presented

to support petitioner's convictions for attempted rape and gross sexual imposition; (8) the jury's

verdicts of guilt were "inadequate" because "the jury did not state the age, name or felony degree

in any of the[] guilty verdicts"; (9) error by the trial court in failing to merge petitioner's

---

[3] It does appear from the record that on December 13, 2013, over two and one-half years after the Ohio Court of Appeals affirmed petitioner's conviction and sentence on direct appeal, petitioner filed a *pro se* notice of appeal and motion for delayed appeal with the Ohio Supreme Court. (*See* Doc. 11, Exs. 38-39).  The motion was denied without opinion on February 19, 2014. (*See id.*, Ex. 40).  In addition, on January 14, 2014, petitioner filed a delayed application under Ohio R. App. P. 26(B) with the Ohio Court of Appeals requesting that the direct appeal be reopened based on claims of ineffectiveness by his appellate counsel. (*See id.*, Ex. 41).  Petitioner also filed a motion for "good cause," wherein he requested that his delay in filing the reopening application be excused. (*Id.*, Ex. 42).  The Ohio Court of Appeals overruled the motion for "good cause" and denied petitioner's reopening application on February 20, 2014. (*Id.*, Ex. 43).  Petitioner appealed further to the Ohio Supreme Court, which entered an order on May 28, 2014 declining to accept jurisdiction of the appeal. (*Id.*, Exs. 44-45, 47).  Both the delayed appeal proceeding before the Ohio Supreme Court and the delayed reopening proceedings took place during the pendency of state-court proceedings on petitioner's second motion for new trial discussed *infra* at pp. 7-9.

convictions as allied offenses of similar import; (10) the sentence imposed was "contrary to law" because it was "excessive"; and (11) error by the trial court in imposing more than minimum, consecutive sentences without making certain factual findings required by Ohio House Bill 86. (*See id.*, at PAGEID#: 467, 475, 483, 486, 489, 497, 499, 501, 504, 508, 510). As evidentiary support, petitioner attached to the motion and additional pleadings various letters and affidavits written by the victims and other members of petitioner's family. (*See id.*, Exs. 18-19).

On March 1, 2012, the trial court denied petitioner's motion for new trial, reasoning in pertinent part as follows:

> The defendant's motion is not timely filed, and he failed to file a motion for leave to file a motion for new trial.
>
> The defendant's newly-discovered evidence – the victims' statements indicating that they lied – could have been discovered and produced at trial. And, the letters and written statements of Chamblin's children do nothing more than impeach their testimony. This is insufficient grounds for granting a defendant's motion for a new trial.

(*Id.*, Ex. 22).

On June 11, 2012, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal with the Ohio Court of Appeals, First Appellate District. (*Id.*, Exs. 23-24). Petitioner alleged as cause for his delay in filing that he did not receive a copy of the trial court's decision until May 9, 2012. (*See id.*, at PAGEID#: 678, 680, 683). The Ohio Court of Appeals granted petitioner's request for a delayed appeal. (*Id.*, Ex. 25). In his appellate brief, petitioner presented the following assignments of error:

1. The Trial Court erred as a matter of law by Denying Defendant's Motion for New Trial based on recanted testimony supported by Newly Discovered Evidence in the Form of Affidavits which Prevented him from receiving Due Process and Created a Fundamental Miscarriage of Justice.

> 2. The Trial Court Erred as a Matter of Law By Ruling That Defendant's Motion for New Trial was not Timely Filed and That Defendant Erred By Failing to File A Motion For Leave To File A Motion For New Trial.
>
> 3. The Trial Court Erred As A Matter of Law By Not Holding An Evidentiary Hearing on Defendant's Motion For New Trial.
>
> 4. The Trial Court Erred As A Matter of Law as Defendant's Conviction is not Supported By Credible Evidence and Is An Extraordinary Case of A Constitutional Violation As Defendant is Actually Innocent.
>
> 5. The Trial Court Erred As A Matter of Law By Failing to Review All Other Claims Asserted By Defendant In His Motion For New Trial. As They Are Not Barred By Res Judicata In That They Constitute Plain Errors And Substantive Rights Which Are Exceptions To Res Judicata.
>
> 6. The Defendant-Appellant's Convictions were Tainted By Prosecutor[ial] . . . Misconduct in the Form of Intimidation of the Witnesses In Violation of Ohio Revised Code Sections 2921.03 and 2921.04. And Coerc[]ion Ohio Revised Code Section 2905.12.

(*Id.*, Ex. 26).

On February 22, 2013, the Ohio Court of Appeals issued a Judgment Entry affirming the

trial court's judgment. (*Id.*, Ex. 28). In so ruling, the court reasoned in relevant part as follows:

> We address first and overrule Chamblin's second assignment of error, challenging the denial of leave [to file a motion for new trial]. The common pleas court had before it competent and credible evidence to support its determination that Chamblin failed to demonstrate by clear and convincing evidence that he had been unavoidably prevented from timely filing his new-trial motion or from timely discovering the evidence upon which his motion depended. Therefore, the court properly denied Chamblin leave to move for a new trial. . . .
>
> Our disposition of Chamblin's second assignment of error renders moot his third assignment of error, challenging the common pleas court's failure to conduct an evidentiary hearing, and his first, fourth, fifth, and sixth assignments of error, which, reduced to their essence, challenge the overruling of the new-trial motion. We, therefore, do not reach the merits of those assignments of error.

(*Id.*). It appears from the record that petitioner did not pursue a further appeal to the Ohio

Supreme Court in that matter. (*See* Doc. 12, p. 9, at PAGEID#: 1788).

### 3.  Second Motion For New Trial:  July 26, 2013-March 25, 2015

On July 26, 2013, petitioner filed with the assistance of new counsel a second motion for

new trial based on "Newly Discovered Evidence," which petitioner claimed he "was unavoidably

prevented from [discovering] within the 120-day period following the jury verdict in this matter

as he was incarcerated." (*See* Doc. 11, Ex. 29).  Petitioner attached to the motion "affidavits of

witnesses for the prosecution," including the victims, who stated "that they lied to the Court

regarding material evidence of the criminal allegations against the Defendant which prevented

him from having a fair trial." (*See id.*).  The court held an evidentiary hearing, in which the

victims, who were then 15 and 16 years of age, testified. (*See id.*, October 3, 2013 Hearing Tr., at

PAGEID#: 1763-77).  At the close of the hearing, the trial court orally denied petitioner's motion

for new trial, reasoning as follows:

> You know, I allowed you to file the motion because it's completely out of time.  I
> don't think it would change the result of the trial because it came up during the
> trial, some question about the kids recanting.  I think it actually could have been
> discovered sooner.
>
> I think that it's merely cumulative to the former evidence.  And it does not impede
> or contradict the former evidence.  For all those reasons, I find that it does not
> heavily weigh in favor of the moving party.

(*Id.*, at PAGEID#: 1777).  On November 25, 2013, the trial court filed a written entry denying the

motion without opinion. (*Id.*, Ex. 30 & Tr. of).

Petitioner pursued a timely *pro se* appeal from the trial court's ruling to the Ohio Court of

Appeals, First Appellate District. (*See id.*, Ex. 31).  In his appellate brief, petitioner asserted two

assignments of error challenging the effectiveness of counsel's representation during the

7

proceedings on the second new trial motion and a third assignment of error alleging the trial court

"abused its discretion" when it denied his motion for new trial and failed to make findings of fact

and conclusions of law in its entry. (*See id.*, Ex. 32).

On September 10, 2014, the Ohio Court of Appeals issued an Opinion and Judgment

Entry affirming the trial court's judgment. (*Id.*, Ex. 34). The court overruled the assignments of

error challenging counsel's effectiveness in preparing and presenting petitioner's motion for new

trial on the ground that petitioner had no constitutional right to counsel in that collateral

proceeding filed after the appellate court had decided his direct appeal. (*Id.*, pp. 2-3, at

PAGEID#: 1027-28). With respect to the remaining assignment of error, the court found no merit

to petitioner's contention that the trial court was required to enter findings of fact and conclusions

of law when it denied petitioner's motion for new trial. (*Id.*, p. 3, at PAGEID#: 1028). The court

also concluded that the trial "court cannot be said to have abused its discretion in overruling

Chamblin's motion for a new trial." (*Id.*, p. 5, at PAGEID#: 1030). In so holding, the court

reasoned in pertinent part as follows in accordance with state-law standards governing post-

conviction motions for new trial:

> The trial record shows that the children had, before trial, variously disavowed and
> then reasserted their sexual-abuse claims, and that the defense had, at trial,
> extensively explored this matter with the children and other witnesses. In denying
> Chamblin a new trial, the common pleas court concluded that, because the matter
> of "the kids recanting" had "c[o]me up during the trial," Chamblin had not
> sustained his burden of proving a strong probability of a different result if a new
> trial were granted. The record contains competent and credible evidence to
> support the court's conclusion.

(*See id.*, pp. 4-5, at PAGEID#: 1029-30).

Petitioner timely appealed that decision to the Ohio Supreme Court, which issued an entry

8

on March 25, 2015 declining to accept jurisdiction of the appeal. (*See id.*, Exs. 35-37).

## B. Federal Habeas Corpus Petition

The instant federal habeas action officially commenced on August 20, 2015, when the clerk of court docketed petitioner's application for leave to proceed *in forma pauperis* together with his attached habeas corpus petition. (*See* Doc. 1). However, for statute of limitations purposes, it is presumed that the petition was filed on August 10, 2015, which is the date petitioner claims he submitted his pleadings to the prison mail room for delivery to this Court. (*See* Doc. 3, at PAGEID#: 189).[4]

In the petition, petitioner asserts the following grounds for relief:

**Ground One:** Insufficient evidence.

**Ground Two:** Ineffective assistance of trial counsel [based on counsel's failure (1) to re-argue the Rule 29 motion for acquittal at the close of trial; (2) to obtain an expert witness to counter the State's expert regarding "false allegations" of "sexual abuse with the children repeatedly recanting their allegations to several different people"; (3) to introduce the victims' medical records as support for a claim of "actual innocence"; (4) to have the victims independently evaluated; (5) to allow petitioner to testify at trial; and (6) to introduce "any mitigation at all at sentencing."]

**Ground Three:** Trial court erred by sentencing to consecutive sentences; maximum sentences; sentence of 22 years was contrary to law and unlawful.

**Ground Four:** Ineffective assistance of appellate counsel for failing to raise 1) prosecutorial misconduct, vouching; 2) trial counsel ineffective for failing to raise

---

[4] It is well-settled that the filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006). Although petitioner has declared "under penalty of perjury" that he placed his pleadings in the prison mailing system on August 10, 2015, it appears from the prison cashier's certificate dated August 17, 2015, which was included as part of petitioner's pauper application, that the pleadings may have been placed in the prison mailing system at a later date. (*See* Doc. 1, at PAGEID#: 8). Nevertheless, the undersigned will still assume in petitioner's favor that the August 10, 2015 date provided by petitioner in the petition is the presumed filing date in this case.

wrong[] amendment of the indictment in jury instructions[;] 3) . . . Tonya Allen testifying to the veracity of the alleged victims.

**Ground Five:**  Actual innocence.

**Ground Six:**  Due process violations [in proceedings on petitioner's] motion for new trial [based on allegations that petitioner's retained counsel provided ineffective assistance in those proceedings].

**Ground Seven:**  Violation of n[eu]tral and detached duties and abuse of discretion by trial court, "due process violation," [based on the court's failure to order a new trial].

**Ground Eight:**  Trial court and First Ohio Court of Appeals made contrary to law rulings.

(Doc. 3, at PAGEID#: 179, 181, 182, 184, 200-01, 220, 242, 249, 250).

Respondent has filed a motion to dismiss the petition. (Doc. 12).  Respondent contends

that the petition is subject to dismissal with prejudice because it is barred from review by the

applicable one-year statute of limitations governing federal habeas actions by state prisoners,

which is set forth in 28 U.S.C. § 2244(d).  (*See id.*).  Petitioner has filed a brief opposing the

motion to dismiss.  (Doc. 14).

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 12) SHOULD BE GRANTED BECAUSE GROUNDS ONE THROUGH FOUR ARE TIME BARRED AND PETITIONER IS NOT ENTITLED TO RELIEF BASED ON ANY TIMELY CLAIMS ALLEGED IN GROUNDS FIVE THROUGH EIGHT OF THE PETITION

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

pursuant to the judgment of a state court must file an application for a writ of habeas corpus

within one year from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

The Court must first determine which limitations provision contained in 28 U.S.C. § 2244(d)(1) applies to petitioner's eight grounds for habeas corpus relief.  As an initial matter, it is clear from the record that § 2244(d)(1)(B) and § 2244(d)(1)(C) are inapplicable because petitioner neither has alleged that he was prevented from filing a timely habeas petition by any state-created impediment to filing, nor has asserted a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review.  It is also clear from the record that, as respondent has argued (*see* Doc. 12, pp. 18-19, at PAGEID#: 1797-98), the claims alleged in Grounds One through Four of the petition are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A) because the factual bases for those claims arose during the trial and direct appeal proceedings and were discoverable in the exercise of due diligence before the conclusion of direct review or expiration of time for seeking such review.

On the other hand, it appears that the later limitations provision set forth in § 2244(d)(1)(D) applies to the claims alleged in Grounds Six through Eight of the petition to the extent that those grounds for relief involve challenges to retained counsel's performance and the

11

state courts' rulings in proceedings on petitioner's motions for new trial, which took place long

after petitioner's conviction became final by the conclusion of direct review. The claim of "actual

innocence" alleged in Ground Five presents a closer question. An argument can be made that the

claim is also governed by § 2244(d)(1)(D) because petitioner has indicated that it is based on

newly discovered evidence introduced in the proceedings held on his motions for new trial. (*See*

Doc. 3, at PAGEID#: 220). However, much of the evidence relied on by the petitioner as support

for his new trial motions—*i.e.*, letters from petitioner's children recanting their trial testimony

against their father, as well as from other family members essentially vouching for petitioner's

character, attacking the credibility of the victims and supporting the victims' recantation of their

trial testimony (*see* Doc. 11, Exs. 17-18, 29)—was either known by petitioner or discoverable in

the exercise of due diligence at the time of his trial and certainly before petitioner's conviction

became final by the conclusion of direct review.

   The Sixth Circuit has held that the petitioner bears the burden of persuading the court of

his due diligence in searching for the factual predicate of his claims. *See, e.g., Stokes v. Leonard*,

36 F. App'x 801, 804 (6th Cir. 2002) (citing *Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir. 2001));

*see also McSwain v. Davis*, 287 F. App'x 450, 454-55 (6th Cir. 2008). Here, petitioner has not

met that burden. *Cf. McSwain*, 287 F. App'x at 454-55; *Allen v. Warden, Warren Corr. Inst.*, No.

1:12cv652, 2014 WL 29533, at *1, *6 (S.D. Ohio Jan. 3, 2014) (Litkovitz, M.J.; Beckwith, J.)

(and cases cited therein). *See also Wiles v. Warden, Marion Corr. Inst.*, No. 1:14cv685, 2015 WL

4467766, at *1, *5 (S.D. Ohio July 21, 2015) (Bowman, M.J., Barrett, J.) (holding that §

2244(d)(1)(A), as opposed to § 2244(d)(1)(D), governed the petitioner's actual-innocence claim

in case where the petitioner pleaded guilty to sex offense charges involving his grand-niece, who

12

later averred in an unsworn letter that she knew the petitioner "didn't do nothing"); *Pugh v.*
*Sheldon*, No. 1:10cv1648, 2012 WL 2533405, at *2-3 (N.D. Ohio June 29, 2012) (in a case where
the petitioner argued that § 2244(d)(1)(D) applied because of later recantation testimony, the court
reasoned that the factual predicate of the petitioner's claim of actual innocence "would have
always been known" to the petitioner and, therefore, the petitioner did not exercise due diligence
when years later he obtained recantation affidavits from his ex-wife, son and victim daughter).
Indeed, the evidentiary basis for the new trial motions mirrored evidence elicited at trial that was
used by the defense to advocate the theory that the children, who had made several inconsistent
statements prior to trial (including recantations of their accusations against petitioner), lacked
credibility and had lied about being sexually abused by their father in order to get away from his
live-in girlfriend, whom they feared and hated. (*See* Doc. 3, at PAGEID#: 220-41; Doc. 11, Trial
Tr., at PAGEID#: 1340-41, 1344, 1350-52, 1366-67, 1372, 1383, 1404-05, 1406-08, 1410-11,
1415-18, 1424-25, 1433-37, 1594-95, 1605, 1617, 1632, 1634-35, 1641, 1656, 1690-1700, 1703-
04 & October 3, 2013 Hearing Tr., at PAGEID#: 1763-77).

Nevertheless, the undersigned will assume, without deciding, that the § 2244(d)(1)(D)
limitations provision applies to the "actual innocence" claim alleged in Ground Five as well as to
the claims alleged in Grounds Six through Eight of the petition.  Under that limitations provision,
Grounds Five through Eight would arguably not be time-barred after taking into account tolling
principles.  Therefore, the undersigned also assumes, without deciding, that such claims are not
subject to dismissal on statute-of-limitations grounds.

As discussed below, it appears that petitioner's first four grounds for relief, which are
governed by the one-year statute of limitations set forth in § 2244(d)(1)(A), are subject to

dismissal on statute-of-limitations grounds. Although the undersigned has assumed that the claims alleged in Grounds Five through Eight are not time-barred under the later limitations provision set forth in § 2244(d)(1)(D), those claims should also be dismissed on the alternative ground that they do not warrant federal habeas relief.

## A. Statute-Of-Limitations Bar To Review: Grounds One Through Four

With respect to the claims in Grounds One through Four, which are governed by § 2244(d)(1)(A), it is clear from the record that, as respondent has contended, petitioner's conviction became final on April 18, 2011, when the 45-day period expired for filing a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' March 4, 2011 decision affirming the trial court's judgment of conviction and sentence on direct appeal. (*See* Doc. 11, Ex. 16; Doc. 12, pp. 18-19, at PAGEID#: 1797-98); *see also* Ohio S.Ct.Prac.R. 6.01(A)(1) & 7.01(A)(1)(a)(i); *Gonzalez v. Thaler,* __ U.S. __, 132 S.Ct. 641, 653-54 (2012) (holding that because the petitioner did not appeal to the State's highest court, his conviction became final under § 2244(d)(1)(A) "when his time for seeking review with the State's highest court expired"). The statute of limitations commenced running on April 19, 2011, one day after petitioner's conviction became final, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later on April 19, 2012 absent application of statutory or equitable tolling principles.

During the one-year limitations period, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v.*

14

*Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive'

the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not

yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259

(S.D.N.Y. 1998)).  Once the limitations period is expired, state collateral review proceedings can

no longer serve to avoid the statute-of-limitations bar.  *Id.*

  In this case, the § 2244(d)(1)(A) statute of limitations that commenced on April 19, 2011

ran for 210 days before it was arguably statutorily tolled by the filing on November 15, 2011 of

petitioner's first *pro se* motion for new trial.  (*See* Doc. 11, Ex. 17).  The respondent has argued

that the motion was rejected by the state courts as untimely and, therefore, was not "properly

filed" for tolling purposes under § 2244(d)(2).  (*See* Doc. 12, pp. 19-20, at PAGEID#: 1798-99).

Respondent's argument has merit.

  It is well-settled that a state application for post-conviction relief is "properly filed" within

the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the

applicable laws and rules governing filings," such as those prescribing the time limits for filing.

*Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  State post-conviction or collateral review applications

rejected by the state courts on timeliness grounds are not "properly filed" and, therefore, are not

subject to statutory tolling under § 2244(d)(2).  *See Allen,* 552 U.S. at 5-6; *see also Pace v.

DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Vroman,* 346 F.3d at 603.  It is well settled that

delayed motions for new trial filed after the conclusion of direct review are state collateral review

applications, which will not serve to toll the limitations period if they were denied by the state

courts as untimely.  *See, e.g., Bolling v. Warden, Lebanon Corr. Inst.*, No. 3:10cv114, 2010 WL

2076747, at *2 (S.D. Ohio Mar. 31, 2010) (Report & Recommendation) (holding that the filing of

15

a delayed motion for new trial "did not toll the running of the [habeas] statute of limitations because the state courts rejected it as untimely"), *adopted*, 2010 WL 2076931 (S.D. Ohio May 24, 2010); *Graham v. Bagley*, No. 3:07cv1313, 2009 WL 983007, at \*1 (N.D. Ohio Apr. 13, 2009) (holding that a delayed motion for new trial, which the trial court denied because the petitioner "had neither filed first for leave nor had . . . shown a reason as to why his motion for a new trial was late, . . . was untimely and did not toll the AEDPA's one-year limitations period"); *Carson v. Hudson*, No. 2:07cv375, 2008 WL 482864, at \*6 (S.D. Ohio Feb. 15, 2008) (citing *Pace,* 544 U.S. at 417, and *Artuz*, 531 U.S. at 8, in holding that the habeas statute of limitations was not tolled under § 2244(d)(2) while a motion for new trial was pending in the state courts "because the trial court denied the motion . . . as untimely"); *Bozik v. Hudson*, No. 106cv798, 2007 WL 433265, at \*7 (N.D. Ohio Jan. 28, 2007) ("Neither petitioner's motion for new trial . . . nor his petition for post-conviction relief . . ., each of which was filed prior to the expiration of the one-year limitations period, served to toll that period in light of the fact that the state trial court found them to have been untimely filed, rendering them 'improperly filed' for the purpose of tolling the AEDPA limitations period."). *Contrast Pudelski v. Wilson*, 576 F.3d 595, 609-10 (6th Cir. 2009) (involving motion for new trial, which was considered a "part of the original proceedings and . . . not collateral to his conviction or a post-conviction proceeding," because the motion was filed before the petitioner had commenced his direct appeal).

Here, as respondent has argued, the trial court denied petitioner's first motion for new trial, which was filed over eight months after the judgment of conviction and sentence was affirmed on direct appeal, because it was "not timely filed" and petitioner had "failed to file a motion for leave to file a motion for new trial." (*See* Doc. 11, Ex. 22). The Ohio Court of

16

Appeals, which issued the final ruling in the matter, affirmed the trial court's decision because petitioner had "failed to demonstrate by clear and convincing evidence that he had been unavoidably prevented from timely filing his new-trial motion or from timely discovering the evidence upon which his motion depended." (*See id.*, Ex. 28). Because the state courts thus rejected the post-conviciton motion on timeliness grounds, it was not "properly filed" within the meaning of § 2244(d)(2) and, therefore, did not serve to toll the limitations period, which expired on April 19, 2012. The filing of petitioner's second motion for new trial over a year later in July 2013, as well as petitioner's subsequent filings of unsuccessful motions for delayed appeal to the Ohio Supreme Court in December 2013 and delayed reopening of the appeal in January 2014, did not stop the running of the clock, which had long since run its course.

In any event, even assuming, solely for the sake of argument, that petitioner's first motion for new trial was a "properly filed" state collateral review petition that tolled the limitations period, such tolling is insufficient to avoid the statute-of-limitations bar to review of the claims alleged in Grounds One through Four of the petition. Specifically, it is assumed that the limitations period was tolled under the statutory tolling provision from November 15, 2011 (the date petitioner filed his *pro se* motion for new trial with the trial court) through April 8, 2013 (the date the 45-day period expired for filing a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' February 22, 2013 final entry in that matter).[5] (*See* Doc. 11, Exs. 17, 28).

---

[5] An argument can be made that the statute of limitations was not tolled during the period of time between April 2, 2012 (the deadline date for filing a timely appeal to the Ohio Court of Appeals from the trial court's denial of the new trial motion) and June 11, 2012 (the date petitioner filed his motion for delayed appeal with the Ohio Court of Appeals). (*See* Doc. 11, Exs. 22-24). Nevertheless, the undersigned assumes, without deciding, in petitioner's favor that because the Ohio Court of Appeals granted petitioner's delayed appeal motion, that period of time should be included as part of the tolling calculation.

17

*Cf. Harper v. Warden, Belmont Corr. Inst.*, No. 2:14cv1220, 2015 WL 3867262, at \*8 & n.3

(S.D. Ohio June 23, 2015) (Report & Recommendation) (and numerous cases cited therein)

(taking into account for statutory tolling purposes the 45-day period in which the petitioner could

have sought leave to appeal a state post-conviction ruling to the Ohio Supreme Court), *adopted*,

2015 WL 4538566 (S.D. Ohio July 27, 2015), *appeal filed*, No. 15-3958 (6th Cir. Sept. 2, 2015).

The statute-of-limitations clock, which recommenced on April 9, 2013, ran for an additional 108

days for a total of 318 days before it was arguably tolled again by the filing on July 26, 2013 of

petitioner's second motion for new trial. (*See* Doc. 11, Ex. 29). That matter concluded on March

25, 2015, when the Ohio Supreme Court issued the final entry declining to accept jurisdiction of

petitioner's appeal. (*See id.*, Exs. 34, 37). *Cf. Lawrence v. Florida,* 549 U.S. 327, 333-34 (2007)

(wherein the Supreme Court made it clear that in contrast to the provision set forth in 28 U.S.C. §

2244(d)(1)(A) for determining the finality of a state conviction, tolling under § 2244(d)(2) does

*not* include the time for seeking review in the United States Supreme Court through a petition for

certiorari).[6] The statute commenced running again on March 26, 2015 and expired 47 days later

on or about May 12, 2015, three months before the instant action commenced in August 2015.

Therefore, absent application of equitable tolling principles, the claims alleged in Grounds

One through Four of the petition, which are governed by the limitations provision set forth in 28

U.S.C. § 2244(d)(1)(A), are time-barred.

---

[6] It is noted that the Court need not consider whether petitioner's motion for delayed appeal to the Ohio Supreme Court filed in December 2013, or whether petitioner's delayed application for reopening of the appeal filed in January 2014, also serves to toll the statute of limitations. As noted earlier, *see supra* p. 4 n.3, those proceedings commenced and concluded while petitioner's second motion for new trial was pending before the state courts. Because the undersigned has already assumed that the statute of limitations was tolled during that entire time period, petitioner's motion for delayed appeal and delayed reopening application do not affect the tolling calculation.

18

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland,* 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace,* 544 U.S. at 418. Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated that an "extraordinary circumstance" prevented him from filing a timely federal habeas petition before the expiration of the one-year limitations period in April 2012, or certainly by May 2015 (after assuming in petitioner's favor that his two motions for new trial tolled the limitations period). Therefore, petitioner is not entitled to equitable tolling of the statute of limitations.

Finally, petitioner has not shown that the procedural bar to review should be excused based on a colorable showing of actual innocence. The Supreme Court has held that "actual

innocence, if proved, serves as a gateway through which a petitioner may pass" a statute of

limitations bar to review. *McQuiggin v. Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013). The

Supreme Court has made it clear, however, that "tenable actual-innocence gateway pleas are rare:

'[A] petitioner does not meet the threshold requirement unless he persuades the district court that,

in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty

beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)); *see also*

*House v. Bell*, 547 U.S. 518, 538 (2006) (pointing out that the *Schlup* actual-innocence standard is

"demanding and permits review only in the extraordinary case") (internal citation and quotation

marks omitted). To establish a credible gateway claim of actual innocence, the petitioner must

present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513

U.S. at 324; *see also Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008). In evaluating

"new evidence" presented by a petitioner, the court "may consider how the timing of the

submission and the likely credibility of the affiants bear on the probable reliability of that

evidence." *Schlup*, 513 U.S. at 332; *see also Eberle v. Warden, Mansfield Corr. Inst.*, 532 F.

App'x 605, 612-13 (6th Cir. 2013) (quoting *McQuiggin*, 133 S.Ct. at 1935) ("Although a

petitioner who asserts a convincing actual-innocence claim does not have to 'prove diligence to

cross a federal court's threshold,' timing remains 'a factor relevant in evaluating the reliability of

a petitioner's proof of innocence.'"). Moreover, in assessing whether the petitioner has

established a convincing claim of actual innocence sufficient to overcome the procedural bar to

review, the court must consider "all the evidence, old and new, incriminating and exculpatory,

without regard to whether it would necessarily be admitted under rules of admissibility that

20

would govern at trial." *House*, 547 U.S. at 538 (internal citation and quotation marks omitted).

The undersigned has thoroughly reviewed the entire record and finds that petitioner has not established a colorable claim of actual innocence. Petitioner's own self-serving protestations of innocence are "inherently suspect" and unreliable. *Cf. Freeman v. Trombley*, 483 F. App'x 51, 58 (6th Cir. 2012); *see also Betts v. Tibbals,* No. 1:11cv01107, 2014 WL 4794530, at *48 (N.D. Ohio Sept. 24, 2014) (finding the petitioner's own self-serving affidavit to be lacking in credibility and reliability). Moreover, the undersigned gives little weight to letters by various members of petitioner's family, which were not submitted until after petitioner was convicted and received an aggregate 22-year prison sentence, about the victims' propensity for lying and their hearsay statements recanting their trial testimony. *Cf. Drake v. Woods*, No. 2:13cv13881, 2016 WL 727856, at *6 (E.D. Mich. Feb. 24, 2016) (citing *Knickerbocker v. Wolfenbarger*, 212 F. App'x 426, 433 (6th Cir. 2007); *United States v. Coker*, 23 F. App'x 411, 412 (6th Cir. 2001)) (in holding that affidavits submitted by the petitioner's niece and nephew were "suspect and fail[ed] to amount to the type of extraordinary evidence of innocence that would excuse the late filing of the petition," the court noted that the family members' affidavits were to be viewed with a "heightened" degree of "skepticism" and that statements [from those individuals] that the victim falsified or recanted his testimony [were] only minimally persuasive evidence . . . because as hearsay evidence they are presumptively less reliable than direct testimony"), *appeal filed*, No. 16-1779 (6th Cir. June 10, 2016); *see also Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531-32 (11th Cir. 2009) (holding that the "threshold showing of actual innocence" was not met by affidavits, found to be unreliable, that were submitted by the petitioner's friends and family members several years after the petitioner's trial); *Williams v. Hoffner*, No. 2:15cv13280, 2016

21

WL 2937130, at *7 (E.D. Mich. May 20, 2016) ("Affidavits by family members recanting trial

testimony are . . . of questionable value."); *Kalak v. Berghuis*, No. 2:11cv12476, 2015 WL

2169785, at *8 (E.D. Mich. May 8, 2015) ("Affidavits from family members that are created after

trial are not sufficiently reliable evidence to support a finding of actual innocence.").

      The strongest evidence that petitioner has proffered in support of his actual-innocence

claim is the victims' recantation of their trial testimony against him. As respondent has pointed

out, however, such evidence is not "new" to the extent that evidence was introduced at trial that

the victims had on a number of occasions recanted their accusations of sexual abuse by their

father. At trial, both victims consistently testified that they had lied when they recanted their

accusations because they "felt bad" for their father and did not want to "upset" him, particularly

after seeing him "crying on the floor," and "didn't want him to get hurt or in trouble." (*See* Doc.

11, Trial Tr., at PAGEID#: 1342, 1344, 1372-73, 1404-05, 1410-11, 1433-35, 1441). On cross-

examination, defense counsel elicited testimony from the victims and other witnesses that was

relied on in closing argument to undermine the victims' credibility and to support the defense

theory that the victims had made up the allegations of sexual abuse in order to get away from their

father's "mean" girlfriend. (*See id.*, at PAGEID#: 1350-51, 1415-21, 1424-36, 1594-95, 1605,

1632, 1634-35, 1641, 1656, 1690-1704). At the hearing held in October 2013 on petitioner's

second motion for new trial, the victims essentially testified in accordance with the trial testimony

of their grandmother (who was also petitioner's mother) that, as argued by the defense at trial,

their trial testimony against their father was a lie and that they had made up the sexual abuse

allegations to get away from their father's girlfriend. (*See id.*, Trial Tr., at PAGEID#: 1632,

1696-97 & October 3, 2013 Hearing Tr., at PAGEID#: 1769-70, 1774-75).

Assuming that the victims' belated recantation of their trial testimony can be classified as "new," such testimony falls "far short of the sort of extraordinary showing—like exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—needed to establish [the petitioner's] actual innocence." *See Freeman*, 483 F. App'x at 60 (finding that the credibility of the petitioner's ex-girlfriend and mother of his child was "suspect" and holding that her alibi affidavit submitted years after the petitioner's trial was insufficient to establish a credible actual-innocence claim). "Recantation testimony is properly viewed with great suspicion [as it] upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than undermine confidence in the accuracy of the conviction." *Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006) (quoting *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984) (Brennan, J., dissenting from denial of certiorari), and citing *Byrd v. Collins*, 209 F.3d 486, 508 n.16 (6th Cir. 2000)); *see also Haynes v. Bergh*, No. 13-10358, 2014 WL 6871263, at \*12 (E.D. Mich. Dec. 5, 2014) (quoting *Matthews v. Ishee*, 486 F.3d 883, 895 (6th Cir. 2007) (internal citation and quotation marks omitted), and *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring)) (holding that the petitioner had failed to demonstrate a credible claim of actual innocence "under the demanding *Schlup* standard" given that "recanting affidavits are always viewed with 'extreme suspicion'" and "new statements from witnesses years after the crime are inherently suspect" and "are to be viewed with a 'degree of skepticism'"); *Mahaffey v. Scutt,* No. 12-CV-13743, 2014 WL 4206947, at \*4, \*6 & n.2 (E.D. Mich. Aug. 25, 2014) (citing *Carter* and *Cress v. Palmer*, 484 F.3d 844, 855 (6th Cir. 2007)) (in rejecting the habeas petitioner's claim of actual innocence based on one victim's "recanting letter" after the petitioner was convicted upon

entry of a no-contest plea to charges of sexually assaulting two of his step-children, the district

court noted that "the victim's alleged recantation is not the type of reliable evidence that would

establish petitioner's actual innocence to excuse his default"); *Gray v. Hudson*, No. 1:06cv1308,

2008 WL 1995362, at *21 (N.D. Ohio May 5, 2008) (and numerous cases cited therein) (holding

that "the inherent suspiciousness of the recanting affidavits [of prosecution witnesses] coupled

with their late filing more than three years after conviction and the lack of explanation as to why

they were filed so late" failed to demonstrate "new reliable evidence" of the petitioner's actual

innocence). "Skepticism about recantations is especially applicable in cases of child sexual abuse,

where recantation is a recurring phenomenon, such as where family members are involved and the

child has feelings of guilt or where family members seek to influence the child to change the

story." *Wiles, supra*, 2015 WL 4467766, at *7 (quoting *Parker v. Bauman*, No. 5:10cv14304,

2012 WL 2223986, at *7-8 (E.D. Mich. June 15, 2012), in turn citing *United States v. Miner*, 131

F.3d 1271, 1273-74 (8th Cir. 1997), and *United States v. Provost*, 969 F.2d 617, 619-20 (8th Cir.

1992)); *see also Artiaga v. Money*, No. 3:04cv7121, 2006 WL 1966612, at *11-13 (N.D. Ohio

July 11, 2006) (and numerous authorities cited therein) (holding that child sex abuse victim's

recantation of her original testimony against her father was "not new reliable evidence to support

a claim of actual innocence").

Upon review of the entire record, the undersigned is convinced that the victims' belated

recantation of their trial testimony is insufficient to establish that "no juror, acting reasonably,

would have voted to find [petitioner] guilty beyond a reasonable doubt" of attempted rape and

three counts of gross sexual imposition. *See McQuiggin*, 133 S.Ct. at 1928; *Schlup*, 513 U.S. at

329. The suspect recantation evidence, submitted several months after the 22-year prison

24

sentence was imposed in this case, is particularly weak in the face of the victims' unwavering and consistent trial testimony that they had been sexually abused by their father and that their prior recantations of those accusations were "lies" made out of concern for their father's feelings and the possible penalties that he faced. Indeed, when petitioner's son was specifically asked on cross-examination whether he had ever told his grandmother and aunt that "the only reason [he] said these things happened is because [he and his sister] didn't like [their father's girlfriend]," he responded emphatically in the negative and even expressed surprise, saying "Where would you get that idea?" (*See* Doc. 11, Trial Tr., at PAGEID#: 1280). Finally, the recantation evidence is particularly suspect because although the victims admitted at the hearing held on the second motion for new trial that they were living with their aunt at the time of petitioner's trial, they did not provide any explanation as to why they testified against their father at the trial, where he faced a prison sentence if convicted, when the purported reason for lying was no longer an issue. Therefore, upon review of the entire record, the undersigned concludes that petitioner's submissions are insufficient to establish a credible claim of actual innocence that would excuse the statute-of-limitations bar to review.

Accordingly, in sum, the undersigned concludes that Grounds One through Four of the petition are barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254. Under the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), the statute began to run on April 19, 2011, one day after petitioner's conviction and sentence became final, and expired one year later on April 19, 2012, over three years before petitioner initiated the instant action in August 2015. Even assuming, *arguendo*, that statutory tolling principles apply to cover the time periods in which petitioner's

25

two motions for new trial were pending in the state courts, the extended limitations period would have expired in May 2015, three months before the instant action commenced. Equitable tolling principles do not apply to further extend the limitations period or otherwise avoid the statute-of-limitations bar to review in this case. Therefore, respondent's motion to dismiss (Doc. 12) should be **GRANTED** to the extent that the claims alleged in Grounds One through Four of the petition are time-barred.

### B.  Remaining Claims: Grounds Five Through Eight

In Grounds Six through Eight of the petition, petitioner asserts claims challenging his retained counsel's performance in the proceedings held on his second motion for new trial, as well as the state courts' refusal to grant him a new trial. (*See* Doc. 3, at PAGEID#: 242, 249, 250). In Ground Five of the petition, he essentially contends that the evidence submitted in support of his new trial motions demonstrates his "actual innocence" on the charges of attempted rape and gross sexual imposition. (*See id.*, at PAGEID#: 220).

As a threshold matter, petitioner has not stated a cognizable ground for federal habeas relief to the extent that he alleges in Grounds Seven and Eight that the state courts erred under state law or misapplied state law in ruling on his motions for new trial. In this federal habeas case, the Court's review is limited to consideration of claims alleging a violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on a "perceived error of state law" fall outside the scope of the Court's review and, therefore, do not constitute cognizable grounds for federal habeas relief. *See id.*; *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Pulley v.*

*Harris,* 465 U.S. 37, 41 (1984). Therefore, petitioner is unable to obtain relief based on any claim

that the state courts erred or misapplied Ohio law in denying his motions for new trial. *Cf.*

*Pudelski v. Wilson,* 576 F.3d 595, 610-11 (6th Cir. 2009) (holding that the petitioner's claim that

the "trial court abused its discretion and misapplied Ohio law when denying his motion for new

trial based on newly discovered evidence" was "clearly premised on issues of state law," which

are "not subject to habeas review"); *Rigdon v. Ohio Adult Parole Authority*, No. 1:08cv716, 2010

WL 3910236, at *11 (S.D. Ohio July 7, 2010) (Wehrman, M.J.) (Report & Recommendation)

(rejecting petitioner's claim that "the trial court erred in its application of Ohio R. Crim. P. 33 or

otherwise abused its discretion in denying his motion for new trial" because it involved "issues of

state-law only which are not cognizable in this federal habeas proceeding"), *adopted*, 2010 WL

3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.).

  In addition, petitioner has not stated a cognizable ground for federal habeas relief to the

extent that he claims in Grounds Six through Eight that he is entitled to relief based on alleged

errors or deficiencies that occurred in the proceedings held on his post-conviction new trial

motions. As discussed above in addressing the statutory tolling of the statute of limitations

governing Grounds One through Four of the petition, the motions for new trial, which were filed

after petitioner's conviction became final by the conclusion of the direct review proceedings in

April 2011, amounted to a collateral attack on petitioner's conviction and sentence. Petitioner's

allegations of deficiencies in those state post-conviction proceedings fall outside the scope of

federal habeas review because they involve "'collateral matters' as opposed to 'the underlying

state conviction giving rise to the prisoner's incarceration.'" *Cress v. Palmer*, 484 F.3d 844, 853

(6th Cir. 2007) (quoting *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1986)) (involving claim

challenging the denial of the opportunity to present recantation evidence in a state post-conviction proceeding); *see also Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001). *Cf. Hatton v. Richard*, No. 2:15cv1506, 2016 WL 1444242 (S.D. Ohio Apr. 13, 2016) (granting the respondent's motion to dismiss a habeas petition for failure to present a cognizable ground for federal habeas corpus relief in a case where the petitioner challenged "constitutional errors" that occurred in proceedings on the petitioner's post-conviction motion for new trial based on the recantation of a prosecution witness). Federal habeas review is not available to attack the legality of post-conviction proceedings because such proceedings are not related to a petitioner's detention. *Kirby*, 794 F.2d at 247-48; *see also Cress,* 484 F.3d at 853; *Alley v. Bell*, 307 F.3d 380, 387 (6th Cir. 2002).

To the extent that petitioner is seeking in Grounds Five through Eight to assert a due process claim attacking his underlying conviction based on the evidence submitted in support of his new trial motions, his claim arguably is subject to review by this Court to the extent it is not precluded on statute-of-limitations grounds. *See Guidry v. Sheets*, 452 F. App'x 610, 613 (6th Cir. 2011). However, as the Sixth Circuit pointed out in *Guidry*, 452 F. App'x at 613, petitioner's claim "faces two, ultimately insurmountable, hurdles to success."

First, because the claim "asserts only a due process violation, and not an independent constitutional infirmity, at best it can succeed only if the denial of the motion[s] for a new trial implicated 'fundamental fairness.'" *Id.* (quoting *Austin v. Mack*, No. 1:03cv323, 2005 WL 1652533, at *8 (S.D. Ohio July 11, 2005) (internal citation omitted)). In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court made it clear that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent

28

an independent constitutional violation occurring in the underlying state criminal proceedings."

*Herrera*, 506 U.S. at 400 (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963)).  Because the

Supreme Court has yet to recognize a freestanding actual innocence claim, the Sixth Circuit has

repeatedly ruled that, particularly in the context of a non-capital case such as this, such claims are

not cognizable on federal habeas review.  *See, e.g., Cress*, 484 F.3d at 854 (and Sixth Circuit

cases cited therein); *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014); *Sitto v. Lafler*, 279

F. App'x 381, 382 (6th Cir. 2008); *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007); *see*

*also Speer v. United States*, No. 2:12cv277, 2014 WL 1367076, at *2 (S.D. Ohio Apr. 7, 2014)

(and Sixth Circuit cases cited therein) (holding that the petitioner was unable to obtain habeas

relief based on a freestanding claim of actual innocence because the Supreme Court has never

recognized such a claim).  To the extent that a due process claim of fundamental fairness may be

considered, the "standard is all the more daunting because the success of [the petitioner's] claim

depends on a federal court making a factual determination that credits [the post-conviction

recantation testimony] at the expense of the [witnesses'] prior trial testimony." *Guidry*, 452 F.

App'x at 613.  However, because the state courts made the opposite finding when considering

petitioner's motions for new trial, the federal habeas court must presume that the state-courts'

finding is correct unless it is overcome "by clear and convincing evidence." *Id.* (quoting 28

U.S.C. § 2254(e)(1)).

Second, "when arrayed against these imposing standards, [petitioner's] claim for relief is

weak." *See id.* As discussed above in addressing the actual innocence exception to the statute-of-

limitations bar to review of Grounds One through Four of the petition, the evidence submitted by

petitioner in support of his new trial motions is suspect and fails to give rise to a credible claim of

actual innocence. *Cf. id.* (emphasizing the court's "natural distrust of after-the-fact witness recantations"). In any event, the record supports the state court's factual determination that the "defense had, at trial, extensively explored" the issue of the victims' prior recantations. (*See* Doc. 11, Ex. 34). Therefore, it was reasonable for the state courts to find that petitioner had not met his burden of showing a new trial was warranted based on new evidence creating a "strong probability of a different result" in the proceeding. (*See id.*). Moreover, in the absence of a finding by the state courts that the victims' trial testimony was "false," any claim by petitioner of a due process violation "collapses." *Cf. Guidry*, 452 F. App'x at 613.

Accordingly, in sum, the undersigned concludes respondent's motion to dismiss (Doc. 12) should be **GRANTED** because, although the claims alleged in Grounds Five through Eight of the petition may not be time-barred, they do not warrant federal habeas relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 12) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DISMISSED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in Grounds One through Four of the petition, which this Court has concluded are procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling that such claims are subject to dismissal on statute-of-limitations grounds.[7] A certificate of appealability should also not issue with respect to

---

[7] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional

the claims alleged in Grounds Five through Eight of the petition in the absence of a substantial

showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the

issues presented are "adequate to deserve encouragement to proceed further." *See id.* at 475

(citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R.

App. P. 22(b).

      3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,*

the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting

this Report and Recommendation would not be taken in "good faith," and therefore **DENY**

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Stephanie K. Bowman
United States Magistrate Judge

---

claim in the time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES E. CHAMBLIN,
    Petitioner,

    vs

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:15-cv-545

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc